STATE OF WEST VIRGINIA

*In re* **B.B.**

**No. 18-0994** (Cabell County 17-JA-117)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.B., by counsel Richard L. Vital, appeals the Circuit Court of Cabell County's October 9, 2018, order terminating his parental rights to B.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jacquelyn Biddle, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the instant proceedings, in 2016, the DHHR filed a child abuse and neglect petition against petitioner regarding two older children.[3] Petitioner was adjudicated as an abusing parent and granted a post-adjudicatory improvement period, which required petitioner to submit to drug screens, attend parenting and adult life skills classes, complete a Batterer's Intervention and Prevention Program ("BIPP"), and maintain stable housing and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner sets forth seven assignments of error, each of which relate to the termination of his parental rights. They will be addressed as one herein.

[3]The petition was also filed against the mother of B.B., the only child at issue on appeal. At the time of the prior petition's filing, petitioner and the mother were in a relationship and each had two biological children from prior relationships, but B.B. had not yet been born.

employment. However, petitioner failed to comply with the terms and conditions of his improvement period, was expelled from the BIPP, and was unable to continue visiting with his children because of his failure to complete that program. Ultimately, in April of 2017, the circuit court permitted petitioner to voluntarily relinquish his parental rights rather than proceeding to involuntarily termination.

Approximately one month later, the mother gave birth to petitioner's third child, B.B., the only child at issue on appeal. Later in May of 2017, the DHHR filed the instant child abuse and neglect petition, in which it alleged that petitioner was previously expelled from the BIPP in a prior case and failed to complete his improvement period, ultimately resulting in the voluntary relinquishment of his parental rights. The DHHR concluded that petitioner's circumstances had not changed since the filing of the prior petition in 2016. The DHHR further alleged that petitioner and the mother were advised on multiple occasions that they were not to be in a relationship due to their respective Child Protective Services ("CPS") cases, but that they continued their relationship despite this directive. The petition also indicated that, upon taking custody of the child, petitioner "became belligerent and yelling, threatening to break people's windows out with a baseball bat."

In October of 2017, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition. Specifically, petitioner testified that he "had an anger management issue" at the time the petition was filed and had previously relinquished his parental rights to two older children. The circuit court adjudicated petitioner as a neglecting parent and granted him a post-adjudicatory improvement period, which required that he submit to drug screens, attend parenting and adult life skills classes, and complete the BIPP, among other things.

Petitioner was granted an extension of his improvement period in April of 2018. The circuit court held a dispositional hearing in September of 2018. Testimony established that petitioner missed several drug screens and attended only forty percent of his supervised visits with the child. At the visits he did attend, the child had to be reintroduced to petitioner due to the substantial gaps in time and was anxious in petitioner's presence. Petitioner also failed to bring any basic care items to the visits and was only attentive to the child "at times." Further, petitioner failed to complete the BIPP and parenting classes. In a report, the parenting provider stated that petitioner continued to lack accountability and blamed others.

Petitioner testified that he missed drug screens due to his work schedule. Regarding visits, petitioner testified that he missed several due to his sickness, the child's sickness, and the child's unavailability. Petitioner stated that he did not complete the BIPP because the program refused to readmit him due to his prior expulsion, despite the circuit court's order that the program grant him re-entry. Petitioner further denied that he was belligerent, yelling, or threatening anyone at the time the child was removed from his home, as set forth in the petition.

After hearing evidence, the circuit court found that there was "no reason to believe the conditions of neglect that continue to this day will substantially improve in the near future." Further, the circuit court found that the best interests of the child required termination of

petitioner's parental rights and that there was no less restrictive alternative. It is from the October 9, 2018, dispositional order terminating his parental rights that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises several assignments of error with regard to the termination of his parental rights. Petitioner argues that there was insufficient evidence to terminate his parental rights and specifically takes issue with the circuit court's finding that there was no reasonable likelihood that he could correct the conditions of neglect in the near future. According to petitioner, he complied with his improvement period in that he maintained suitable housing and employment. He asserts that he never tested positive for drugs and notes that the DHHR conceded that drugs were not an issue in his case. As such, petitioner avers that his missed drug screens should not have been part of the basis for terminating his parental rights. Moreover, petitioner argues that the evidence does not establish that he never completed his parenting and adult life skills classes. He further argues that he gave plausible reasons for why he was not able to complete the BIPP or visit the child consistently. Petitioner also takes issue with the circuit court's finding that termination was in the best interests of the child. He argues that no evidence was presented that his home would be "detrimental or harmful to the child" and that no evidence refuted the fact that he loves the child. As such, petitioner states that because "there is no evidence of physical, mental or emotional abuse to the child," the circuit court erred in terminating his parental rights.[5] Lastly, petitioner argues that the circuit court erred in failing to

---

[4]Both parents' parental rights were terminated below. B.B. was placed in a foster home with a permanency plan of adoption therein.

[5]To the extent that petitioner is arguing that he did not abuse or neglect the child, we note that petitioner stipulated to the allegations contained in the petition and was adjudicated as a neglecting parent based upon the same. As such, we find no error in this regard.

employ a less restrictive disposition. Upon our review, we find no merit in any of petitioner's arguments.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future" and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

There is sufficient evidence to establish that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future given that he failed to follow through with services designed to reduce or prevent the abuse and neglect of the child. Specifically, petitioner failed to submit to random drug screens, attend adult life skills and parenting classes, and participate in supervised visitation with the child. The record demonstrates that petitioner missed ten drug screens from October of 2017 through March of 2018, failed to submit to any drug screens after June of 2018, and missed at least forty percent of his supervised visits. While petitioner argues that his missed drug screens should not be held against him since the DHHR conceded he did not have a drug issue, we note that petitioner was aware of and agreed to the terms and conditions of his improvement period, which clearly stated that he was to submit to random drug screens. Further, petitioner's argument that there was no evidence presented that he had not completed his parenting and adult life skills classes simply because the DHHR worker testified that "to [her] knowledge" he had not completed them is disingenuous in light of the fact that he fails to cite to the record to show where he established that he completed the classes and merely focuses on the phrasing of the worker's testimony.

Regarding his participation in services, petitioner takes issue with the circuit court's findings about his failure to comply when he provided testimony that he did, in fact, comply. For example, petitioner testified that he missed visits due to his illnesses and the child's illnesses, and was unable to complete parenting and adult life skills classes because the provider stopped responding to his calls. However, petitioner fails to cite to the record demonstrating that he submitted evidence to corroborate his testimony in any manner. As such, his proffered excuses for why he did not complete certain aspects of his improvement period are nothing more than self-serving assertions which were weighed by the circuit court. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, we find no error in the circuit court's assessment of the witnesses' credibility in making findings and rulings below.

Assuming for the sake of argument that petitioner is correct that he substantially complied with the above-mentioned terms and conditions of his improvement period, the fact remains that petitioner was adjudicated based upon his anger issues and failed to complete the BIPP. Here, the petition established that, in his prior case, petitioner failed to complete the BIPP and was expelled from the same. At the time the petition was filed, the DHHR alleged that petitioner had not addressed the issues since the filing of the prior petition and exhibited threatening behavior upon the removal of the child from his home. Petitioner stipulated that he had anger management issues and agreed to submit to a BIPP.[6] However, he failed to do so. While petitioner argues that the program would not readmit him, he provides no evidence supporting his claim. Indeed, the record establishes that the circuit court's order was twice faxed to the program in an effort to remedy the issue, yet petitioner continued to claim that the program would not readmit him. Moreover, petitioner fails to explain why he was unable to remedy the problem in the year after he was granted his post-adjudicatory improvement period. West Virginia Code § 49-4-610(4)(A) specifies that "the respondent shall be responsible for the initiation and the completion of all terms of the improvement period." Despite having ample time, petitioner fails to provide credible answers as to why he was unable to complete the BIPP. Therefore, we find no error in the circuit court's determination that there was "no reason to believe the conditions of neglect that continue to this day will substantially improve in the near future" and that termination was in the child's best interests.

To the extent that petitioner argues the circuit court should have employed a less restrictive alternative, we note that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

---

[6]Despite stipulating that he had anger issues, at the dispositional hearing petitioner testified that he never became belligerent, yelled, or threatened anyone at the time of the child's removal. Indeed, the record is replete with examples of petitioner denying culpability and blaming others for his situation. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). As such, petitioner's failure to acknowledge the conditions of abuse and neglect supports the circuit court's finding that there was no reasonable likelihood that he could correct the conditions of neglect in the near future.

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because petitioner failed to participate in services or meaningfully address the issues giving rise to the petition, we find that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 9, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison